IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF WEST VIRGINIA

**KAREEM MILHOUSE,**

    **Plaintiff,**

v.                                                                              **Civil Action No. 1:14cv16**
                                                                                   **(Judge Keeley)**

**TERRY O'BRIEN, Warden, et al.,**

    **Defendants.**

**REPORT AND RECOMMENDATION ON PLAINTIFF'S
FIRST, SECOND AND THIRD MOTIONS FOR PRELIMINARY OR TEMPORARY
INJUNCTIONS AND/OR TEMPORARY RESTRAINING ORDERS**

    The *pro se* plaintiff initiated this case on January 27, 2014, by filing a civil rights complaint alleging he is in imminent danger from other prisoners, concerning certain events at U.S.P Hazelton. Plaintiff contends he has received death threats. Further, he alleges he was assaulted on January 18, 2014, and he has a sore chin and a lump on the back of his head as a result. In response to plaintiff's allegations, on January 28, 2014, the undersigned entered an Order directing the Warden provide an answer within seven days only as to plaintiff's allegations of imminent harm. The Warden timely filed his response and the petitioner has replied.

    Currently pending before the Court are the plaintiff's three motions for temporary or preliminary injunctions and/or temporary restraining orders. Specifically, the plaintiff seeks an "immediate Order of transfer," directing the Bureau of Prisons to send him to another facility and/or place him in protective custody.

    The standard for granting injunctive relief in this circuit is set forth in <u>Real Truth About Obama, Inc. v. Federal Election Comm'n.</u>, 575 F.3d 342 (4th Cir.2009). As articulated in <u>Real Truth</u>, before a court may grant injunctive relief, the movant is required to establish "(1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary

relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest." *Id*. at 346 (citations omitted).

Without specifically addressing the other factors, the plaintiff's claim for a preliminary injunction clearly fails to satisfy the first factor because the plaintiff cannot succeed on the merits of his request for injunctive relief.

The pertinent statutes relevant to the plaintiff's request for an order regarding transfer are found at 18 U.S.C. § 3621(b) and 4081. Section 3621(b) states:

> The Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate.

Section 4081 states:

> The Federal penal and correctional institutions shall be so planned and limited in size as to facilitate the development of an integrated system which will assure the proper classification and segregation of Federal prisoners according to the nature of the offenses committed, the character and mental condition of the prisoners, and such other factors as should be considered in providing an individualized system of discipline, care, and treatment of the persons committed to such institutions.

These statutes provide the BOP with wide discretion to determine where to house a prisoner, and also to prevent prisoners from challenging their geographic designation within the BOP system. Moody v. Daggert, 429 U.S. 78, 87 n. 9, (1976) (stating that § 4081 provides the BOP with wide discretion and provides "no legitimate statutory or constitutional entitlement sufficient to invoke due process."); Trowell v. Bealer, 135 Fed. App'x 590, 595 (4th Cir. 2005).

Furthermore, "[i]t is well settled that the decision where to house inmates is at the core of prison administrators' expertise." McKune v. Lile, 536 U.S. 24, 40 (2002) (citing Meachum v. Fano, 427 U.S. 215, 225 (1976)). Changes "in a prisoner's location, variations of daily routine, changes in conditions of confinement (including administrative segregation), and the denial of privileges [are] matters which every prisoner can anticipate [and which] are contemplated by his original sentence to
2

prison." Gatson v. Taylor, 946 F.2d 340, 343 (4th Cir. 1991). Accordingly, because an inmate has no constitutional right to assignment to any particular prison, there is no probability that the plaintiff will succeed on the merits of his request for an order from this court directing the BOP to transfer him. Further, the plaintiff's request for secure custody is moot.[1]

Accordingly, for the foregoing reasons, the undersigned **RECOMMENDS** that the plaintiff's First, Second and Third Motions for a Preliminary or Temporary Injunction and/or Temporary Restraining Order (Dkt.# 2, 12, and 15) be **DENIED**.

Within **fourteen (14) days** after being served with a copy of this Report and Recommendation, **or by March 11, 2014**, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections should also be submitted to the United States District Judge. **Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation**. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Report and Recommendation to the *pro se* plaintiff by certified mail, return receipt requested, to his last known address as shown on the docket, and to counsel of record by electronic means.

DATED: February 25, 2014

/s/ James E. Seibert
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE

---

[1] The record reveals that petitioner has been in secure custody in the Special Housing Unit ("SHU") since December 14, 2013. See Dkt.# 14 at 3 and Dkt.# 14-1 at 1.

3